

Indian Wells
(760) 568-2611

Irvine
(949) 263-2600

Los Angeles
(213) 617-8100

Ontario
(909) 989-8584

# BEST BEST & KRIEGER ᴸᴸᴾ
## ATTORNEYS AT LAW

Riverside
(951) 686-1450

Sacramento
(916) 325-4000

San Diego
(619) 525-1300

Walnut Creek
(925) 977-3300

1155 Connecticut Avenue N.W., Suite 1000, Washington, D.C. 20036
Phone: (202) 785-0600  |  Fax: (202) 785-1234  |  www.bbklaw.com

**Joseph Van Eaton**
(202) 370-5306
joseph.vaneaton@bbklaw.com

October 27, 2011


Lyle W. Cayce
United States Court of Appeals
  For the Fifth Circuit
600 S. Maestri Place
New Orleans, LA 70130-3408


> Re:    *City of Arlington, Texas, & City of San Antonio, Texas v. FCC et al.*,
>        No. 10-60039 (oral argument held June 8, 2011)

Dear Mr. Cayce:

Pursuant to FRAP 28(j), Petitioners submit *TPA v. FERC*, No. 10-60066 (10/24/2011). In *TPA*, this Court recognized that although the Natural Gas Act gives FERC "extensive regulatory power," it also "designate[s] . . . the areas in which FERC cannot regulate."[1] Specifically, the Court held that an arguably ambiguous reference to "*any* market participant" does not allow FERC to compel *intrastate* pipeline operators to post information.[2] The Court ruled that while FERC might have such authority if the phrase "floated solitary and free,"[3] the statute's context answers whether the phrase includes intrastate pipelines "with a definitive 'no.'"[4] "[A]gencies cannot manufacture statutory ambiguity with semantics to enlarge their congressionally mandated border."[5]

Here, too, the FCC claimed authority to regulate by elevating semantics over definitive statutory context. The FCC asserts that it can rely on other Communications Act provisions to make binding rules with respect to any ambiguous term in Section 332(c)(7)(B) simply because this section falls "within the Act."[6] But Section 332(c)(7)(B) must be read in context; it does not

---

[1] *TPA* at 2.

[2] *Id.* at 8-9.

[3] *Id.* at 6.

[4] *Id.* at 9.

[5] *Id.*

[6] FCC Br.28-29; Ruling ¶24. Congress limited State and local authority in Section 332(c)(7)(B), but did *not* empower the FCC to implement its non-RF limitations with federal, administrative policy.

**BB&K**

**BEST BEST & KRIEGER**⅃⅃ᴾ

**ATTORNEYS AT LAW**

"float solitary and free" in the Communications Act. Section 332(c)(7)(A) establishes a "definitive congressional border" prohibiting the Commission from using *other* Communications Act provisions to adopt binding rules that "limit" or "affect" State and local authority under Section 332(c)(7).[7] The FCC relied on such provisions here,[8] and the resulting rules "affect" local authority.[9] Congress forbid this "with a definitive no."

Sincerely,

/s/ Joseph Van Eaton

Joseph Van Eaton
of BEST BEST & KRIEGER LLP
*Counsel for the City of Arlington, Texas; City of Carlsbad, California; City of Dallas, Texas; City of Dubuque, Iowa; County of Fairfax, Virginia; City of Glendale, California; International Municipal Lawyers Association; City of Los Angeles, California; County of Los Angeles, California; National Association of Counties; National Association of Telecommunications Officers and Advisors; National League of Cities; City of Portland, Oregon; County of San Diego, California; Texas Coalition of Cities for Utility Issues; and United States Conference of Mayors,*

/s/ Tillman L. Lay

Tillman L. Lay
*Counsel for the City of San Antonio, Texas*

cc:     All Counsel

Enclosure

51029.00001\7009439.4

---

[7] Arlington R.Br.13-23 (discussing, *inter alia*, legislative history stating FCC must terminate rulemaking and allow *judicial* adjudication).

[8] Ruling ¶23.

[9] The rules do not *recommend* a court shift the burden of proof; they shift it. And they *mandate* that courts reverse long-standing interpretations. San Antonio R.Br.15; *see also* Arlington R.Br.22 (noting preemption). At oral argument, the FCC again declined to state its rules are advisory. They are not. FCC Br.25 (courts must adopt the FCC's rules over reasonable statutory interpretations).

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 24, 2011

Lyle W. Cayce
Clerk

No. 10-60066

TEXAS PIPELINE ASSOCIATION; RAILROAD COMMISSION OF TEXAS,

Petitioners,

versus

FEDERAL ENERGY REGULATORY COMMISSION,

Respondent.

On Petition for Review of Orders of
the Federal Energy Regulatory Commission
No. RM08-2

Before SMITH, BENAVIDES, and HAYNES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The Texas Pipeline Association and the Railroad Commission of Texas
petition for review of Order Nos. 720 and 720-A of the Federal Energy Regula-
tory Commission ("FERC").  We grant review and vacate both orders because
they exceed the scope of FERC's authority under the Natural Gas Act of 1938

No. 10-60066

("NGA"), 15 U.S.C. § 717.

## I.

Congress regulates the natural gas industry primarily through the NGA, which gives FERC extensive regulatory powers over the industry, including the ability to fix rates and issue the certificates required for natural gas companies to operate. *See* 15 U.S.C. §§ 717c(a), 717f(c)(1)(A). Yet, Congress deliberately chose not to regulate "the entire natural-gas field to the limit of constitutional power" but instead designated the areas to be regulated and the areas in which FERC cannot regulate.[1]  Specifically, § 1(b) of the NGA states that the Act applies "to the transportation of natural gas in interstate commerce [and] to the sale in interstate commerce of natural gas for resale . . . *but shall not apply to* any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution . . . ." 15 U.S.C. § 717(b) (emphasis added).

As part of the Energy Policy Act of 2005, Congress amended the NGA by adding § 23, Pub. L. No. 109-58, § 316, 119 Stat. 594, 691-92, which directs FERC to "facilitate price transparency in markets for the sale or transportation of physical natural gas in interstate commerce," 15 U.S.C. § 717t-2(a)(1). To that end, § 23 allows FERC to obtain and disseminate information about "the availability and prices of natural gas sold at wholesale and in interstate commerce" from "any market participant." *Id.* § 717t-2(a)(2)-(3). Pursuant to that grant of authority, FERC issued Order No. 720, which adopted a rule (the "Posting Rule") that requires "major non-interstate pipelines . . . to post scheduled flow information and to post information for each receipt and delivery point with a design

---

[1] *Nw. Cent. Pipeline Corp. v. State Corp. Comm'n of Kan.*, 489 U.S. 493, 510 (1989) (quoting *FPC v. Panhandle E. Pipeline Co.*, 337 U.S. 498, 502-03 (1949)).

No. 10-60066

capacity greater than 15,000 MMBtu per day."[2]  "Major non-interstate pipe-lines," according to the rule, are defined as "those natural gas pipelines that deliver more than 50 million MMBtu per year."[3]

After participating in notice and comment for Order No. 720, petitioners applied for rehearing, contending that the proposed rule would exceed FERC's authority under the NGA.  In Order No. 720-A, FERC clarified the rule and reduced the number of non-interstate pipelines covered by it but ultimately denied rehearing.[4]  Petitioners filed separate petitions for review as authorized by 15 U.S.C. § 717r(b), arguing again that the Posting Rule exceeds FERC's authority under the NGA and seeking vacatur of Order Nos. 720 and 720-A.  We consolidated the petitions for review.

## II.

Petitioners contend that the Posting Rule exceeds the authority granted to FERC by the NGA, in violation of § 10(e) of the Administrative Procedure Act ("APA"), which prohibits any agency action "in excess of statutory jurisdiction, authority, or limitations."  5 U.S.C. § 706(2)(C).  FERC responds that its inter-pretation of the NGA, and specifically § 23, authorizes the Posting Rule.  We review FERC's construction of the NGA under the familiar two-step framework articulated in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).[5]

---

[2] Pipeline Posting Requirements Under Section 23 of the Natural Gas Act, 73 Fed. Reg. 73,494, 73,494 (Nov. 20, 2008) (codified at 18 C.F.R. pt. 284) [hereinafter Order No. 720].

[3] *Id.*

[4] Pipeline Posting Requirements Under Section 23 of the Natural Gas Act, 75 Fed. Reg. 5178, 5178-82 (Jan. 21, 2010) [hereinafter Order No. 720-A].

[5] *See, e.g.*, *Pac. Gas & Elec. Co. v. FERC*, 106 F.3d 1190, 1196 (5th Cir. 1997) (applying the *Chevron* framework in assessing whether FERC had supplied a reasonable construction
(continued...)

No. 10-60066

At step one, we examine *de novo* whether Congress has "directly spoken to the precise question at issue." *Id.* at 842 (citations omitted). If, using traditional tools of statutory construction, the intent of Congress is clear, then the matter is at an end, and the challenged regulation will stand or fall in accordance with the unambiguous will of Congress. *Id.* at 842-43 & n.9. If, however, the statute is genuinely ambiguous on the question at issue, then we proceed to step two, at which we will defer to the agency's construction of the statute so long as it is a permissible one. *See id.* at 843.

The central question is whether § 23 permits FERC to compel owners and operators of *intra*state pipelines (or, as FERC has designated them, "non-interstate pipelines") to post flow, capacity, and scheduling information on the Internet. The relevant portions of § 23 direct FERC to promulgate rules that facilitate transparency in the interstate market for natural gas:

> (2) . . . The rules shall provide for the dissemination, on a timely basis, of information about the availability and prices of natural gas sold at wholesale and in interstate commerce to the Commission, State commissions, buyers and sellers of wholesale natural gas, and the public.
>
> (3) The Commission may—
>
> (A) obtain the information described in paragraph (2) from any market participant . . . .

15 U.S.C. § 717t-2(a)(2)-(3).

In support of its position that it had the authority to promulgate the Posting Rule, FERC focuses on the language in § 23(3)(A) that includes "any market participant" within the ambit of regulable entities. FERC argues that broad phrase is ambiguous but can reasonably be interpreted to include major intra-

---

[5] (...continued)
of the NGA).

No. 10-60066

state pipelines because they are so integrated with the interstate market, being links between interstate pipelines and through participation in national market hubs (which service both interstate and intrastate pipelines), that interstate and intrastate markets functionally operate as one large interconnected market. Thus, FERC contends it can fulfill Congress's directive of facilitating price transparency in the interstate market only by requiring this information from major intrastate pipelines, because "a complete picture of the interstate natural gas market . . . require[s] information from non-interstate natural gas pipelines." Order 720-A at 73,496. In short, FERC argues that major intrastate pipelines "participate" in the interstate market, so § 23(3)(A) can reasonably be interpreted to apply to them—an interpretation that, urges FERC, warrants *Chevron* deference.

Before we address deference to FERC's interpretation of § 23 under step two, we must first, under step one, determine whether Congress has unambiguously spoken to the question whether intrastate pipelines may be regulated under § 23. As in all statutory-construction cases, we begin by examining the text. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002). Section 23 directs FERC to "facilitate price transparency in markets for the sale or transportation of physical natural gas in *interstate* commerce." 15 U.S.C. § 717t-2(a)(1) (emphasis added).[6] Thus, the market referred to in the phrase "any market participant" is specifically the *interstate* market. FERC concedes this point but argues that the term "any" is broad (or at least ambiguous) enough to include major intrastate pipelines, because they also "participate" in the interstate market.

Although sufficient ambiguity might exist to warrant moving to *Chevron*

---

[6] Additionally, subsection 2 permits FERC to create rules "for the dissemination . . . [of] information about the availability and prices of natural gas sold at wholesale and in *interstate* commerce." 15 U.S.C. § 717t-2(a)(2) (emphasis added).

step two if § 23 floated solitary and free in the U.S. Code, "a reviewing court should not confine itself to examining a particular statutory provision in isolation. The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) (citations omitted).

The context of § 23 is the NGA, codified in Title 15, Chapter 15B, which commences, in § 1(b), with the scope of the chapter:

> The provisions of this chapter shall apply to the transportation of natural gas in *interstate* commerce, to the sale in *interstate* commerce of natural gas for resale . . ., and to the importation or exportation of natural gas in foreign commerce . . ., *but shall not apply to* any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas.

15 U.S.C. § 717(b) (emphasis added). That provision unambiguously denies FERC the power to regulate entities specifically excluded from Chapter 15B, including wholly-intrastate pipelines, given that they either are involved solely in the "local distribution of natural gas" or are otherwise involved in "other transportation" of natural gas not in interstate commerce. The entirety of Chapter 15B is inapplicable to intrastate pipelines, so neither § 23 nor the phrase "any market participant" can apply to those pipelines.

Nevertheless, FERC sees ambiguity in these otherwise-clear provisions, using three principal arguments. First, it contends that the jurisdictional limitations of § 1(b) are not applicable to § 23; rather, Congress through § 23 intended to create a new "transparency authority" separate and distinct from the ratemaking and certification authority delimited in § 1. Although finding no support for this new, expanded jurisdiction in the text or legislative history, FERC posits that Congress's intent to grant this new "transparency authority" can be divined from other entities more explicitly regulated by an expanded jurisdiction in § 23.

No. 10-60066

As its prime example, FERC points to § 23(d)(2), which exempts "natural gas producers . . . who have a *de minimis* market presence." This means that, FERC argues, natural gas producers who have a significant market presence *are* subject to § 23 even though the "production" of natural gas is explicitly excluded in § 1(b), lending weight to the conclusion that § 23 is not subject to the strictures of § 1(b).

Even assuming *arguendo* that expansion of jurisdiction in one area (gas producers) implies expansion in others (intrastate pipelines), FERC's argument equates the natural gas "producers" of § 23 with the production of natural gas exempted from regulation in § 1(b), overlooking the fact that producers of natural gas are still within § 1(b)'s jurisdictional limits if they engage in interstate transportation or sale of the natural gas they produce, even if the production itself is not regulable.[7]  Accordingly, applying § 1(b) does not transform § 23's *de minimis* clause into surplusage, nor does § 23 silently expand FERC's jurisdiction beyond the limits of § 1(b).

FERC advances a second surplusage argument, contending that because existing regulations already require interstate pipelines to post capacity and scheduling information, *see* 18 C.F.R. § 284.13, § 23 must have been enacted to expand FERC's authority to include intrastate pipelines, lest it be rendered redundant.  But rather than believing that Congress intended us to read between the statutory lines to ascertain that the goal of § 23 was to collect information from intrastate pipelines, we recognize that § 23 accomplishes many things aside from the purported ability to regulate intrastate pipelines—such as making availability on interstate pipelines more transparent, cementing the regulations FERC already has in place, and directing how that transparency is to

---

[7] *See Shell Oil Co. v. FERC*, 566 F.2d 536, 539 (5th Cir. 1978) ("The producers are subject to the jurisdiction of the FERC when they engage in activities that can be classified as sales or transportation rather than as production or gathering.") (citation omitted).

No. 10-60066

be implemented.  Indeed, as part of the very order being challenged, FERC amended its preexisting regulations on interstate pipelines for the express purpose of coming into compliance with the transparency directives of § 23.  *See* Order No. 720, at 73,515.

Finally, FERC asserts that the congressional choice of "any market participant" over the statutorily defined term "natural gas company" evinces Congress's intent for "any market participant" to be broadly construed.  "Natural gas company" is defined as "a person engaged in the transportation of natural gas in interstate commerce, or the sale in interstate commerce of such gas for resale."  15 U.S.C. § 717a(6).  But even if "any market participant" has a greater scope than does "natural gas company," that does not free the term from the limitations imposed by § 1(b), nor would applying § 1(b) render the two terms synonymous.  The petitioners correctly point out that, for example, "any market participant" can be broader than "natural gas company" by including importers and exporters of natural gas that were brought under FERC's jurisdiction contemporaneously with § 23.[8]

In summary, all attempts by FERC to show that § 1(b) does not limit the scope of § 23 of the NGA are unavailing, and the NGA unambiguously precludes FERC from issuing the Posting Rule so as to require wholly intrastate pipelines to disclose and disseminate capacity and scheduling information.  Indeed, other parts of the NGA, as well as its history, confirm our conclusion that Congress did not intend to regulate "the entire natural-gas field to the limit of constitutional power"[9] but chose instead to leave regulation of certain entities, including intra-

---

[8] *See* 15 U.S.C. § 717(b) (including "importation and exportation of natural gas in foreign commerce" under Chapter 15B through modification of § 1(b) by the Energy Policy Act of 2005, Pub. L. No. 109-58, 119 Stat. 594, § 311, at 685-88).

[9] *Nw. Cent. Pipeline*, 489 U.S. at 510 (quoting *FPC v. Panhandle E. Pipeline Co.*, 337 U.S. 498, 502-03 (1949)),

No. 10-60066

state transactions and pipelines, to the states.

Section 1(c), for example, exempts natural gas transactions and the facilities used therewith between one person and "another person within or at the boundary of a State if all the natural gas so received is ultimately consumed within such State," specifically adding that all exempted matters "are declared to be matters primarily of local concern and subject to regulation by the several States."[10] This distinction between interstate and intrastate natural gas transactions, historically, has always been recognized: "Three things and three only Congress drew within its own regulatory power . . . . These were: (1) the transportation of natural gas in interstate commerce; (2) its sale in interstate commerce for resale; and (3) natural gas companies engaged in such transportation or sale." *Panhandle E. Pipe Line Co. v. Pub. Serv. Comm'n*, 332 U.S. 507, 516 (1947). Where Congress *has* decided to expand FERC's jurisdiction, it has done so explicitly and unambiguously, as it did with the inclusion, within FERC's purview, the foreign importation and exportation of natural gas in the Energy Policy Act of 2005—the very law that created § 23—by modifying § 1(b). *See* Pub. L. No. 109-58, 119 Stat. 594, § 311, 685-88.

Although the *Chevron* framework requires courts to give administrative agencies a substantial amount of deference in interpreting the statutes they administer, agencies cannot manufacture statutory ambiguity with semantics to enlarge their congressionally mandated border. "Ambiguity is a creature not of definitional possibilities but of statutory context." *Brown v. Gardner*, 513 U.S. 115, 118 (1994) (citation omitted). The context provided by § 1(b) answers the question whether this phrase includes intrastate pipelines with a definitive "No." Because congressional intent is clear, the question is answered at *Chevron* step

---

[10] 15 U.S.C. § 717(c); *see also Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 284 n.3 (1997) (noting that § 1(c) "exempts from FERC regulation intrastate pipelines that operate exclusively in one State and with rates and service regulated by the State").

No. 10-60066

one, and we need not proceed to step two.  FERC has no statutory authority to promulgate Order Nos. 720 and 720-A, so it has violated § 10(e) of the APA.[11]

For the foregoing reasons, the challenged orders unambiguously exceed the authority granted to FERC under the NGA.  The petitions for review are GRANTED, and the orders are VACATED.

---

[11] Texas Pipeline Association also argues that the Posting Rule in Order Nos. 720 and 720-A was promulgated in violation of the APA as "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A).  Because the rule exceeded FERC's statutory authority, we need not reach that issue.